## W. J. VISER v. W. M. RICE.

1. In those States where law and equity are blended and the remedy in each class of cases is sought in the same tribunal, it has been held that an equitable title will support the action of ejectment. (Miller v. Alexander, 8 Texas, 43, cited by the court.)

2. V., in 1852, received from D. H., as agent of his brother, J. H , a deed to certain town lots, in which deed a blank was left for the grantee's name. V., being indebted to G., R. & Co. took the deed to them and offered them the lots in payment at the price he had given for them ; but they declined, and told him that his deed was defective and he had better get a conveyance direct from J. H. V. failed to do this, but got D. H. to assure G., R. & Co. that he had empowered V. to fill the blank with any name he chose. V. left the deed with G., R. & Co., telling them they could either take the lots themselves at the price or sell them for it to any one else. Two years afterwards, G., R. & Co., concluding to take the lots themselves, filled the blank with the name of R., one of their firm, and then had the deed recorded ; but they gave no notice of this action to V., and passed nothing to his credit for some three years thereafter. About two years after the record of the deed, V. inquired of R. about the matter, and was told by him that he did not know what had become of the deed ; but V., finding the deed upon the record, was dissatisfied. Four years more elapsed, when V. took possession of the lots, and R. sued him in trespass to try title, and pending the suit procured from J. H. a deed of confirmation of the deed formerly made by

D. H. as agent.    *Held*, that the original deed could not operate as a conveyance of the legal title, but as between V. and his grantor, it was evidence of a contract of sale; that the deed of confirmation to R. from J. H. conveyed no title, inasmuch as it only confirmed the equitable title previously conveyed to V., and it cannot be allowed to prejudice V. in this suit, because it was procured *pendente lite* and is indicative of fraud; that G., R. & Co. could not be agents to sell the lots to themselves, nor could the first deed operate as a contract in writing between them and V., so as to take the transaction out of the statute of frauds.

3. Touching blanks left in deeds for name of grantee, the case of McCown v. Wheeler, 20 Texas, 372, is cited by the court with approval.

4. On the facts above indicated, R. stands as a trustee of the legal title for the benefit of V., who holds a title good in equity.

5. If this transaction could be regarded as a mortgage by V. to G., R. & Co., the latter, it seems, could not have relief on the mortgage in this action of trespass to try title.    (No question of mortgage appears in the pleadings.)

6. An option to take property at a stated price, no time being limited, must be exercised within a reasonable time; and in this case two years and more were held not to be a reasonable time.

APPEAL from Harris.    Tried below before the Hon. C. B. Sabin.

The opinion of the court gives a clear statement of the material facts of this case.    In the court below the plaintiff, Rice, obtained a general verdict in his favor, whereon the court awarded him judgment with writ of possession for the lots.    Failing to get a new trial the defendant appealed.

*Hill & Hill*, for the appellant.—In considering the appellee's pretensions to an equitable title to the lots, growing out of what he attempts to show was a contract of sale between himself and Viser, we interpose, in the first place, the objection arising under the statute of frauds, that there was no contract in writing or memorandum thereof, signed by the parties or either of them, and that no contract can be the basis of an action by him, unless it is in writing.    Was there in this case

any contract in writing or memorandum thereof signed by the party to be charged or by any party? There is no pretense to anything of the kind. Can it be said that the deed was effectual to take the case out of the statute? Clearly not. In the case of McCown v. Wheeler, 20 Texas, 372, the court say in substance, that a deed left blank as to the name of the grantee and filled up after the acknowledgment (the case here), while it would not be operative as a deed, would be admissible evidence of a contract of sale (to take the case out of the statute of frauds) in a suit for specific performance by the grantee against his grantor. And upon proof of payment of the purchase money and that the instrument was delivered to evidence a transfer of title, with authority to fill the blank with the name of the grantee, the court would decree a title. Now, it is clear that if this was a suit brought by Viser against Harris (his grantor) to compel the latter to execute to him a conveyance to the lots, the deed which Harris delivered him with the blank as to the grantee's name would be admissible evidence of a contract of sale, and upon proof by Viser that he had paid the consideration and that Harris delivered to him the instrument to evidence a transfer of the title, with authority to fill the blank with his name, the court would compel Harris to make him a deed; and for the very reason that the blank deed signed and acknowledged by Harris, in connection with the proof that it was delivered to evidence a transfer of the title, fulfills the very requirement of the statute that there must be some memorandum in writing of the contract signed by the party to be charged. But does Rice stand in the same position? Certainly not. The case at bar is between him and Viser; the deed is not signed by Viser; was not delivered to evidence a transfer of title to Rice, and there is no writing or memorandum signed by either Rice or Viser. While, therefore, the deed would clearly take the case out of the statute of frauds, in a suit by Viser against Harris, because it was signed by Harris, and was delivered by him to

Viser to evidence a transfer of title, it is equally clear that it can not do so in this suit by Rice against Viser, because both those conditions are wanting.

We may here refer to the fact that this point was not raised in the court below, and could not have been, because, as before adverted to, the plaintiff did not disclose his case by pleadings. If he had set out that he claimed the property by virtue of a contract of sale with defendant, then we could have raised the objection we now make, either by demurrer or plea, but this we had no opportunity to do. In Garner v. Stubblefield, 5 Texas, 561, the court say that "it is immaterial what admissions are made by the defendant, who insists upon the benefit of the statute, for he throws it upon the plaintiff to show a complete written agreement." "It is submitted whether the defendant can be legally bound by a parol contract which the statute declares shall be in writing, or no action shall be maintained thereon; and it would seem that the answer must necessarily be in the negative." "If the party confesses the agreement and waives or does not insist upon the objection under the statute, the agreement may be enforced; but without this waiver a decree for performance would be clearly in total disregard of the statute." We had no opportunity, by answer, to insist upon the objection, because the plaintiff's petition did not notify us, as it should have done, that he claimed under a contract of sale, but we do now raise and insist upon the objection, and submit that the proof of plaintiff was fatally defective. "There was no written evidence of the contract of sale produced, and any other evidence would not be admissible under the statute of frauds." (Farmer v. Simpson, 6 Tex., 307.)

It is true that there are cases where parol contracts for the sale of lands have been and will be enforced, but it is only where the purchaser has paid, or partially paid, the purchase money, and gone into possession and made valuable improvements, but this is no case of that kind.

But in further examination of Rice's claim that there was a contract of sale, we say that there was not only no contract in writing, but that there was no contract at all; and this, we think, is conclusively shown by his own witnesses.

Viser leaves the deed (according to witnesses for Rice) which Harris had executed and delivered to him with a blank for the name of the grantee, with Groesbeeck, Rice & Co., in September, 1852, authorizing them to sell the property at the price named in the deed, or to take the lots at that price, and in either case to fill up the deed and credit his account with the firm. Here, then, are two distinct propositions made by Viser to Groesbeeck, Rice & Co.:   One is, I constitute you my agent and authorize you to sell the lots, and if you sell fill up the deed with the name of the purchaser, and credit my account with what you receive : the other is, I propose to sell you the lots at the price named in the deed ; if you accept my proposition, fill up the deed and credit my account. The last of these propositions is the only one with which we have to do in this case.   And here we can not do better than quote the law as we find it concisely stated in Boston and Maine Railroad v. Bartlett, 3 Cushing, 224.   The defendant offered in writing to sell to plaintiff certain land at a certain price, if taken within thirty days, and the court said : "In the present case, though the writing signed by the defendant was but an offer, and an offer which might be revoked ; yet, while it remained in force it was a continuing offer during the time limited for acceptance, but so soon as accepted it ceased to be an offer and ripened into a contract. When the offer was accepted the minds of the parties met and the contract was complete.   There was, then, the meeting of the minds of the parties, which constitutes and is the definition of a contract.   It was precisely as if the parties had met at the time of acceptance, and the offer had then been made and accepted, and the bargain completed at once."   In that case the time for acceptance was fixed and limited to thirty days, and the acceptance

being within that time, the court held the contract complete. In the case at bar there was, in the language of the witness, Burnett, "no limitation as to the time of taking or selling," which means no more than that nothing was said about time; but it is a plain and well settled principle of law, that when an offer is made by one party to sell property to another and no time is fixed for acceptance, the acceptance must be in a reasonable time, that is to say, the offer continues for such time as would give a reasonable opportunity for accepting it. In the case quoted from, the parties themselves fixed the limit to thirty days; in the case at bar, the law fixes it to a reasonable time. In the one case, as in the other, there must be the meeting of the minds of the parties to constitute a contract, and unless it "was precisely as if the parties had met at the time of acceptance, and the offer had then been made and accepted, and the bargain completed at once," it cannot be said that there was a contract.

Viser, then, made the offer—not in writing (but we are now considering the case without reference to that objection, and entirely upon Rice's own testimony)—in September, 1852. There the matter rests, and nothing more is heard of it until December 19, 1854, at which time the deed, which Viser had left with the firm, was taken out of their iron safe and, upon consultation between Groesbeeck & Rice, it was decided to take the property at the amount recited in the deed, and thereupon the blank was filled with the name of plaintiff (Rice) and the deed recorded. This was the first act indicating an acceptance, and was done more than two years after the offer. But there was another act to be done by Groesbeeck, Rice & Co., of more importance than filling the deed, before the acceptance was complete, and that was the entering of the credit. When was that done? Not until September 26, 1857, five years after the offer was made, and several months after the firm of Groesbeeck, Rice & Co. had been dissolved. Can it be said that the entry of the credit was not necessary to complete the

acceptance; that it was complete when the deed was filled up? Certainly not. Suppose the offer had been, " if you take the property fill up the deed and remit me the money;" could it be contended that filling up the deed completed the acceptance, and that a delay of three years longer in remitting the money made no difference, was not important? The acts then to be done by Groesbeeck, Rice & Co., before the offer of Viser could, under any circumstances, ripen into a contract, were not complete until September 26, 1857—five years after the offer. Was that within a reasonable time? And whether it was or not is a question for the court and not for a jury. (Parsons on Contracts, vol. 2, 173–174.) Can the court say that the offer was to be treated as a continuing one during all that time? Will it not rather say (and the law is well established) that the offer was to be considered as withdrawn after a reasonable time?

In the case of Porter v. Blood, 5 Pickering, 53, suit was brought on a note dated May 19, 1814. The defendant pleaded the statute of limitations. The plaintiff replied to this plea, that the defendant had acknowledged the debt within six years, by making a payment thereon, in this, that on the third of November, 1815, the defendant deposited with him (plaintiff) certain goods, to be by plaintiff sold and the proceeds appropriated to the payment of the note; that plaintiff sold the goods at different dates, to-wit: in May, 1817, and February, 1821, and on the eleventh of February, 1822, indorsed on the note a credit of the proceeds, and that this was a payment on the note.

The court say, " the question, then, is, whether the sales were made within a reasonable time." " We think clearly they were not." "Admitting the sales to be valid, so as to vest the property in the purchasers, it does not follow that the plaintiff was authorized to appropriate the proceeds so as to revive the defendant's liability without his assent, and without rendering an account of sales or giving him any kind of notice."

XXXIII—10

"Before the appropriation had been made, although after the greater part of the property had been sold, the note was barred by limitation, and this was such a change of circumstances as must have terminated the plaintiff's authority as an agent, if it had not terminated before." "But even if the note had not been barred by the statute at the time of the indorsement, we cannot admit that the defendant would have been bound by it. His direction as we must construe it, was, to make sale of the goods in a reasonable time. This the plaintiff was bound to do for the purpose of saving costs and to stop the interest."

The reasoning of the court, in that case, is conclusive of the case at bar. The claim of Rice against Viser (if any he had) was barred by limitation before the deed was filled up, December 19, 1854, and long before the entry of the credit, by Rice, of $220, in September, 1857. And this, in the language quoted, was such a change of circumstances as must have terminated the authority of Rice, if it had not terminated before.

Viser's direction, as we must construe it, was to make sale of the lots, or to take them at the price named in the deed, ($220,) in a reasonable time. This Rice was bound to do, if for no other reason, to stop the interest.

Upon the proposition that the mere fact of the delay upon the part of Groesbeeck, Rice & Co., was grossly unreasonable, we might safely rest our denial of any contract. But when to this unreasonable delay, is added the fact that in December, 1854, when the deed was filled up, the property had greatly advanced in value, and was worth, according to the testimony of Samuel L. Allen, $1200, he having paid that price, in the same year, for an adjacent block, of equal value; and the fact that in September, 1857, when the credit of $220 was entered, the property had still further greatly enhanced in value, because of the establishment of the railroad depot, as all the witnesses agree; and the further fact that at both those dates Rice's claim against Viser was barred

by limitation—the conclusion is overwhelming that there was not only no contract, but that there was a palpable and deliberate attempt to defraud Viser of his property.

Can the court say, in the language of the decision before quoted, that " there was the meeting of the minds of the parties ; " that it was precisely as if Viser and Rice had met on September 26, 1857, or even December 19, 1854, and the offer had then been made and accepted, and the bargain completed at once ? " (Patton v. Rucker, 29 Tex.. 402.)

Aside, then, from the " Statute of Frauds," which we interpose as an insuperable barrier to the appellee's recovery, we submit that the facts of the case—no matter how they are viewed, or what witness is relied on—show beyond question that there was not only no contract in writing, but that there was no contract at all.

The counsel for appellee in the court below insisted before the court and jury that if he failed to show title to the property, he was at least entitled to recover possession and hold it as security for Viser's indebtedness. This proposition is clearly fallacious, because the proof does not show that the deed was left or deposited for security, or that it was ever in the mind of any of the parties to create any security or mortgage. More than this, the present is not a suit for possession, but an action to try the title. If Rice had been really a mortgagee, entitled to and in actual possession, and Viser, his mortgagor, had wrongfully ejected him, an action of forcible entry and detainer, before a justice of the peace, would have restored him the possession ; but the proof shows that Rice never was in actual possession, unless the placing of a switch on some of the lots by the railroad, for a short time in 1857, can be called actual possession. But the appellee yields his case by claiming to be a mortgagee, and to hold the property as security. He has not brought his suit upon any claim against Viser, and asked a decree of foreclosure of his mortgage upon the property ;

but presuming, perhaps, that " time, with its effacing fingers," had destroyed the evidence which would explain the transaction, he brings suit, not as a mortgagee, but as owner, claiming the property by absolute title. He repudiates Viser's title, and charges him as a trespasser, and cannot now, when driven to the wall, shelter himself under the pretense that he is a mortgagee. It is a sufficient answer to such a position to say that no case of that kind is made by the pleadings. (Duty v. Graham, 12 Tex., 427; Mann v. Falcon, 25 Tex., 271.) His petition is in the usual form of an action of " trespass to try title," and by that he must stand or fall. If he had come into court claiming simply that Viser owed him, and that he had a mortgage on the lots, it would have been a different case, and we would have been prepared to meet it.

*Peter W. Gray*, for the appellee.—The appellant complains that the appellee did not develop by specific allegations, what was his claim to title, yet it will be observed that the defendant below was well aware of it, and in his answer attempted to avoid the validity of the appellee's title deeds by claiming title in himself, and averring that the deeds to plaintiff below had been acquired in derogation of his right, under his purchase from Harris. He seeks to make the appellee's case a suit to enforce an equitable title, or for specific performance, which he endeavors to defeat, now for the first time invoking the statute of frauds in this court. The pleadings of appellee claim both title and prior peaceable possession, as ground for relief against the appellant's violent and lawless mode of asserting title by taking possession. The deeds to the appellee showed title in him, and the evidence proved actual possession in him under the deeds for three years and more before Viser took possession on eighteenth of December, 1860, and ejected the tenant. Now by his defense he seeks to protect himself in this conduct by attacking the title of appellee, instead of restoring the possession as it was (lawfully acquired by

Rice with the knowledge and assent of Viser), and seeking by lawful suit to assert his pretended right to the property. One question, properly presented, then, is, shall a party be allowed, by a forcible or unlawful act, in taking possesion of property from another, even with claim of title, to change the relations between the parties so as to compel the other to sue, and subject him to more stringent rules and restrictions against the enforcement of his rights than he might and could otherwise assert and maintain? Can he be thus deprived of rights as a possessor, and the wrong doer enabled to keep possession, without doing that justice which he would be compelled to do were he the complainant seeking to recover the property by suit?

This was the character of the pleadings by defendant, charging fraud and unreasonable delay in using the power conferred by agreement, and deposit of title deeds as security, and this the evidence upon which the court below based its charge to the jury. This was the evidence upon which the verdict was found by the jury upon the weight of evidence, and their own knowledge of the witnesses and property.

The just result has been attained, however, and no error prejudicial to the rights of appellant was committed. The evidence fully establishes that the blank deed was left for the purpose o securing the debt in part. Its value was to be applied to it, and being an unrecorded deed, Viser gave up his evidence of title so that he could not sell himself, neither could he get it back without doing equity by payment of his debt. No court would have compelled a surrender of it, even had the debt been barred. It was the intention of the parties at the time so to apply it, and that intention was an equitable mortgage. In England a deposit of title deeds for security is a mortgage. (2 Story Eq. Jurisp., § 1020 and notes.) Though that doctrine is not universally recognized in America, yet it is well supported by authority. (See notes 2 and 5 to § 1020, Story Eq., vol. 2. p.

331, and Lord Abinger's opinion there quoted, with other authorities.) It is submitted that the deposit of a blank deed, with privilege to take and power to sell at a price, and to hold as a security for a debt until so taken or sold, is a valid mortgage in equity. A party in possession of such a deed and of the property under it is surely as strongly supported in justice and good conscience to claim protection to his possession, as an ordinary mortgagee in possession.

Thompson v. Hannay, 14 Texas, 142, is directly in point: that a mortgagee in possession cannot be ejected by the owner, without payment of the debt. The iniquity of such a claim is apparent. So also it would be here to allow Viser to recover in a suit by him, or to protect him in his wrongful act. Taking possession under such circumstances was a wrongful act, and it is settled that a party who has possession lawfully may recover in ejectment by virtue of that prior possession against a wrongdoer. To this purport are the cases of Christy v. Scott, 14 Howard, N. S., 292; Wilson v. Palmer, 18 Texas, 592; Kolb v. Bankhead, id. 232.

Whether the transaction be deemed a mortgage or not, the evidence clearly shows that Rice was in lawful possession under such circumstances of right and equitable claim, that Viser could not have maintained an action in equity to dispossess him, but that he took forcible possession. Under such circumstances we submit that Rice ought to be restored, whether he has a perfect title or not, to the position he occupied before the wrongful act of appellant dispossessed him. Otherwise, encouragement will be given to those who seek and are ready to assert their claims by force, taking the law into their own hands with red-handed violence.

This view of the case has been presented because it appears in the record, and is deemed appropriate to be commented upon. It is by no means deemed necessary to our case, for we have as full confidence in the validity of appellee's title as it is decorous to express to a court. It is submitted that the deeds from Harris,

(the admitted original owner,) under whom both parties claim, appear of record in the name of Rice. If Harris had a valid legal title, those deeds, valid on their face, vested that title in Rice; but they did not show a valid legal title from the goverument, nor one against Viser, unless he was bound by them, legally or equitably. If they were made by his authority, or he claimed under Harris, then they showed a valid legal title as against him. This proposition is too plain for argument or authority, and will hardly be denied. Hence the evidence of Burnett was introduced to show that the deed bearing date of 1852, was made by Harris with the authority of Viser, who had an equitable claim only against Harris. Burnett's evidence, and all the evidence on that point, shows that Viser did claim under Harris, so that he could not deny his title; and this dispensed with further proof of title in Harris.

But the evidence at the same time developed the nature of Viser's claim; that he never had legal title vested in him, because a deed so signed and delivered in blank was not valid at common law as a conveyance of legal title. This is admitted by appellant in his argument, and is asserted in McCown v. Wheeler, 20 Tex., 372. Viser then was only the owner of an equitable title to the lots, which really still stood, as to the legal title, in Harris. What did he do with it? He transferred to Rice & Co., by his agreement with and power to them, just the same equitable right which he held, if they acted in pursuance of that agreement and power. What was that? The evidence of all the witnesses (except Black, who either knew nothing about it, or whose memory was too treacherous to be relied on) establishes that he agreed to leave the deed from Harris in blank, (with Harris' knowledge and assent to the arrangement,) on deposit with them, to be held by them as a means to raise money by sale, to be applied to payment of his debt, at a price agreed on, with the privilege to take the title from Harris, or to another, without limitation as to time or period being

specified. The appellant argues that there was no limitation, but that the law would imply a reasonable time. This may be admitted; and what would be a reasonable time could only be determined by a consideration of all the circumstances, and what would be just between the parties. But we submit, with confidence, that while no period of time was specified by days or months, there was a distinct and clear period of time agreed on, and a definite test fixed between them as to what was a reasonable time, in which the power given should be exercised. What was it? Whenever the value of the property should be considered by the firm $220, or that sum could be realized by a sale. Whenever it was fairly worth that sum, then they were given the privilege to take it at that price, or sell it at that. It was not considered worth $220 in September, 1852, by Groesbeeck, and he refused to take it at that price; but, said Viser, I wish to apply it on my debt at that price, at which I took it from Harris in part payment for my boat. I deposit the deed with you for that purpose, "with the privilege of taking the lots at $220, or to sell them at that price whenever a purchaser can be found who will give that, on account of my debt to you." This is substantially the testimony of all who were present and know the facts. "Whenever the lots can realize that price, or are worth that, you may take them on account of my debt."

It is argued that this agreement, offer or power, whichever it may be called, was not valid, because not in writing signed by the party, and therefore void under the statute of frauds. To this, we answer, first, that no such objection was raised in the court below, either in pleading or by objection to evidence, or by asking instruction to the jury. The character of the plaintiff's title was well known long before the trial to appellant's counsel. Every opportunity was afforded to make issue, but not having been made, it is too late now to raise it in this court. (Fry on Specif. Perform., § 310; Story Eq. Pleadg., §§ 750, 760 and 761; Davenport v. Lackie, 8 Tex., 351; Veach v. Millard, 9 id., 351.)

Second, that a parol agreement or power is sufficient to convey such interest as Viser had, to-wit : an equitable title.   The statute of frauds was intended as a protection to the owners of property in whom the written title by deed or record appeared, against pretended claims, based on verbal contracts or parol evidence.   But here, Viser's title or claim was not in writing.   The blank deed from Harris was not a legal title vested and complete in him, but depended on parol evidence.   Where a title is asserted by parol, certainly it can be defeated by parol.   (Story Eq. Jurisp., § 330 ; Smith v. Strahan, 16 Tex., 321.)

Third, the deed was left in blank for the very purpose that the conveyance of the property might be made by parol.   The authority to fill it was given by Harris, not only to Viser, but also to Groesbeeck and Rice.   He was present and assented to the agreement made between Viser and Groesbeeck, and acknowledged the deed in their possession for the purpose of giving them authority to fill the blank.   The subsequent confirmation was from him, and was necessary to complete the title which was imperfect without it, but is evidence that Harris understood the transaction and assented to it.   Now it is clear that if the blank deed from Harris, delivered to Viser with authority to fill it, constituted an equitable title, which could be enforced against Harris by Viser, the delivery of the same deed with like authority by Viser to Groesbeeck, with Harris's consent, would be equally binding and valid against both of them, Viser having the equitable and Harris the legal title.   The doctrine of McCown v. Wheeler, 20 Tex. R., is stronger and clearer as against Viser than against Harris. It supports his right against Harris and equally applies against himself.   No writing from him was necessary, because no title in writing had ever vested in him.   The case of Foster v. Drury, 2 Wallace, U. S. Sup. Ct., p. 33, though not precisely analogous to the case at bar, yet supports the doctrine for which we contend. It admits the validity of parol authority or agreement to fill a

blank deed with the name of the vendee, and explodes the old dicta and "technical dogmas" of past ages. These are not suited to the present times and among people "who deal with lands as they do with oxen, and pass a fee simple to a hundred acres with as much facility as they do the title to a plow or a cart." Mr. Justice Nelson, delivering the opinion of the court, says: "We agree that if she, the wife, was competent to convey her real estate by signing and acknowledging the deed in blank, and delivering the same to an agent, with express or implied authority to fill up the blank and perfect the conveyance, that its validity could not well be controverted. Although it was, at one time, doubted whether a parol authority was adequate to authorize an alteration or addition to a sealed instrument, the better opinion, at this day, is that the power is sufficient." It appears that the authority from Harris to Viser to fill the blank was valid, and a fortiori, like power from Viser and Harris to Groesbeeck and Rice, would be valid against both of them. (See also Lackey v. Gunter, 25 Tex., 400.)

WALKER, J.—This is an action of trespass to try title, commenced by the appellee in the District Court of Harris county, at the Fall term for the year 1860.

The plaintiff appears, from his pleadings, to count upon a legal title, but as the cause progresses it becomes rather a conflict of equities, between plaintiff and defendant.

In those States where law and equity are blended, and the remedy in each class of cases is sought in the same tribunals, it has been held that an equitable title may support the action of ejectment. (Miller v. Alexander, 8 Tex., 43.)

We will have necessarily to look to the facts to determine the legal status of the parties to the suit.

It appears that in the month of September, 1852, Viser sold a boat to D. W. C. Harris, in part or in whole consideration for

which he received a conveyance of lots numbers one to twelve, in block seventeen, in the city of Houston. Harris appears to have conveyed the lots as the attorney in fact of his brother, J. B. Harris. The consideration named in the deed was $220, and the name of the grantee was not filled in. Viser being at the time indebted to the firm of Groesbeeck, Rice & Co., went to them with the deed he had taken from Harris, and proposed giving them the lots for the same consideration he had paid; but the offer was declined, and he was told that the deed was defective, and that he had better get his deed direct from J. B. Harris. It appears that for want of time he did not do this, but got D. W. C. Harris to wait upon Groesbeeck, Rice Co., who explained the deed, and told them that Viser was authorized by him to fill the blank in the deed with any name he desired. Groesbeeck & Rice declining to buy the property, Viser left the deed with them, telling them that they could have the property themselves, or they might sell it to any other party for the sum of $220.

Nothing more is heard of the matter for a little more than two years. In December, 1854, Groesbeeck, Rice & Co. concluded to take the property themselves, and accordingly filled the blank in the deed with the name of William M. Rice. Of this they gave no notice to Viser, nor did they credit him with anything upon their books for some three years after they had thus filled up and recorded the deed. In 1856, Viser came to Houston and inquired about the matter of Rice, who, from some cause or other, gave him but little satisfaction about it further than to say, that he did not know what had become of the deed, but when Mr. Groesbeeck returned (who appears to have been absent,) it would all be right. Viser found the deed on record, and appears to have been displeased with the transaction. Rice afterward, in December, 1862, procured a deed for the same property from John B. Harris. This deed could only operate in furtherance and assurance of the title intended to be conveyed by his brother, D. W. C. Harris, and could only operate as an acknowledgment of his power to convey.

In McCowan v. Wheeler, 20 Texas, 372, the court decide that a deed left blank as to the name of the grantee. and filled up after the acknowledgment, whilst it would not operate as a deed, would be admissible evidence of a contract of sale, and would take the case out of the statute of frauds in an action for specific performance by the grantee against his grantor. The deed left then with Groesbeeck, Rice & Co. did not convey the legal title to Rice, and could only have been good as evidence of a contract of sale as between Harris and Viser. Nor could the subsequent deed from J. B. Harris convey any title, for the very object of the deed was to confirm the sale made by his brother to Viser, to whom a good equitable title had passed by it; and any attempt on the part of J. B. Harris to convey a title to one claiming adversely to Viser, has very much the appearance of an attempt at fraud, and would not be allowed to affect the interest of Viser in this suit which was then pending.

The evidence appears to lead to the conclusion that an offer of sale was made in September, 1852, by Viser to Groesbeeck, Rice & Co., which they then declined accepting; that Viser then made them his agents to sell the land for him to any third party who would give the sum of $220 for it; or if they saw proper they might take it at the same price and credit his account with that sum.

It may be well here to notice that Groesbeeck, Rice & Co. could not be agents to sell the property to themselves, nor is their claim that the deed left with them would operate as a contract in writing to take the case out of the statute of frauds, as between them and Viser, supported by any principle of law or equity; nor does the claim that they held the deed as a mortgage to secure their debt stand upon any better footing. If a mortgage, and good as such, they have their remedy upon it, but not in this action of trespass to try title.

In view of all the facts, as we derive them from the record,

Rice now stands in the relation of a trustee of the legal title, while Viser holds a title good in equity. On the supposition that Viser left it optional with Groesbeeck, Rice & Co. to become the purchasers of the property, no time being fixed by the parties during which the option should continue, the law says they must make their choice within a reasonable time, and it certainly ought not to be contended that this option continued over two years.

The conduct of Rice furnishes fair presumption that he did not so understand the matter. He gave Viser no notice of his taking the property at his offer, and four years afterward appears to have forgotten that he had taken the deed to himself, and entered no credit on Viser's account for over three years after he had taken the deed and recorded it to himself; and a year or more after Viser appears to have repudiated the transaction.

Having thus declared what we conceive to be the law of this case, we reverse the judgment, and remand the case for inquiry of damages and to be tried in accordance with the view of the law which we have presented herein.

Reversed and remanded.